IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Brittany Cash, | C/A NO. |
| PLAINTIFF, | |
| | **COMPLAINT** |
| v. | |
| | (JURY TRIAL DEMANDED) |
| Laurens County, South Carolina; Laurens County Sheriff's Office; Phillip Tollison; Sheriff Don Reynolds; Vera Lawson; and Joshua Cogdill. | |
| DEFENDANTS. | |

Plaintiff, by and through her undersigned attorneys, brings this Complaint against the Defendants named above, alleging as follows:

## **INTRODUCTION**

1.     This case involves the sexual harassment and assault of a vulnerable nineteen-year-old during her on the job training at the Lauren's County Detention Center ("LCDC") by a Deputy Sheriff.

2.      Upon information and belief, deputies who were empowered and placed in positions of trust and authority by Defendants have been committing misconduct for years.

3.      Numerous sexual harassment incidents by male deputies directed toward female colleagues have occurred and little has been done to prevent these incidents.

4.      Despite having knowledge of prior complaints, this type of misconduct has been allowed to continue.

5.      Plaintiff seeks actual and punitive damages, attorneys' fees, and costs from Defendants for Defendants' negligent, reckless, and unlawful acts, all in contravention of the United States Constitution.

## JURISDICTION AND VENUE

6.      This action is brought pursuant to 42 U.S.C. § 1983 for violations of civil rights under the Fourth and Fourteenth Amendments to the United States Constitution.

7.      This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

8.      Venue is proper in the United States District Court for the District of South Carolina, Greenville Division, pursuant to 28 U.S.C. §1391 as a substantial part of the events or omissions complained of occurred within Laurens County, South Carolina.

## PARTIES

9.      Plaintiff Brittany Cash ("Plaintiff") is a resident and citizen of the State of South Carolina, County of Laurens.

10.      Defendants County of Laurens, S.C. ("Laurens County") and Laurens County Sheriff's Office ("LCSO") are political subdivisions of the State of South Carolina as defined in S.C. Code Ann. § 15-78-10, et seq. At all times herein mentioned, Laurens County and LCSO acted and carried on their business by and through their agents, servants, and/or employees at various locations within the County of Laurens, South Carolina. Additionally, these agents, servants, and/or employees were operating within the scope of their officially assigned and/or compensated duties.

11.      Phillip Tollison ("Tollison"), sued both in his individual and official capacities, at all times was a resident of Laurens County, South Carolina. At all times relevant to this action, Tollison was a duly appointed and acting officer and employee of Defendants Laurens County and LCSO. As such, Tollison was a duly appointed agent authorized to enforce the laws under the State of South Carolina, and was so acting under the color of the law of South Carolina at all times relevant herein.

12.      Sheriff Don Reynolds ("the Sheriff"), sued in both his individual and official capacity, at all times was a resident of Laurens County, South Carolina. At all times relevant to this action, the Sheriff was a duly appointed and acting officer and employee of Defendants Laurens County and LCSO. As such, the Sheriff was a duly appointed agent authorized to enforce the laws under the State of South Carolina, and was so acting under the color of the law of South Carolina at all times relevant herein.  Upon

information and belief, the Sheriff is the final policymaker for Laurens County with regard to the law enforcement-related policy decisions or actions described hereinbelow. Pursuant to S.C. Code Ann. § 23-13-10, the sheriff "shall in all cases, be answerable for neglect of duty or misconduct in office of any deputy."

13.    Lieutenant Joshua Cogdill ("Cogdill"), sued in both his individual and official capacities, at all times was a resident of Laurens County, South Carolina. At all times relevant to this action, Cogdill was a duly appointed and acting officer and employee of Defendants Laurens County and LCSO. As such, Cogdill was a duly appointed agent authorized to enforce the laws under the State of South Carolina, and was so acting under the color of the law of South Carolina at all times relevant herein. During all times relevant to this Complaint, Cogdill served as the direct supervisor of Tollison.

14.    Lieutenant Vera Lawson ("Lawson"), sued in both her individual and official capacities, at all times was a resident of Laurens County, South Carolina. At all times relevant to this action, Lawson was a duly appointed and acting officer and employee of Defendants Laurens County and LCSO. As such, Lawson was a duly appointed agent authorized to enforce the laws under the State of South Carolina, and was so acting under the color of the law of South Carolina at all times relevant herein. During all times relevant to this Complaint, Lawson served as the Training Lieutenant and was, therefore, responsible for implementing and scheduling a comprehensive operations training program as prescribed and provided by the South Carolina Criminal Justice Academy.

4

## SEXUAL HARASSMENT STATISTICS

15.     Notwithstanding the fact that most employers and companies have sexual harassment policies and procedures and provide sexual harassment training, there are thousands of sexual harassment claims filed with the Bureau of Labor Statistics annually in the United States.

16.     Sexual harassment and assault at work have serious implications for women and for their employers. Women who are targets of sexual harassment may experience many negative consequences, including physical and mental health issues, career interruptions, and lower earnings. Institute for Women's Policy Research, "Sexual Harassment and Assault at Work: Understanding the Costs," https://iwpr.org/iwpr-publications/briefing-paper/sexual-harassment-and-assault-at-work-understanding-the-costs/. Moreover, sexual harassment may limit or discourage women from advancing into higher paid careers and thus contribute to the persistent gender wage gap. *Id.*

17.     According to various studies, including a recent one performed by Harvard located at https://hbr.org/2016/10/why-we-fail-to-report-sexual-harassment, sexual harassment continues to be especially problematic for women in predominantly masculine industries. Of the women who were interviewed in the study, 75% indicated that they had been sexually harassed at work.

18.     Another recent study, located at https://www.huffingtonpost.com/2015/02/19/1-in-3-women-sexually-harassed-work-cosmopolitan_n_6713814.html, found that while 1 in 3 women have been sexually harassed at work, 71% of women who have been sexually harassed never reported it.

According to the same study, a staggering 41% of women surveyed had encountered unwanted touching and sexual advances at work. Additionally, witnesses to sexual harassment frequently fail to report sexual harassment.

19.     According to Harvard Business Review, there are three potential reasons why it can be difficult to speak up about sexual harassment, including: fear of retaliation, the bystander effect, and a masculine culture that permits sexual harassment.

20.     The Harvard study found that most of the women who failed to report sexual harassment failed to do so because of fear of retaliation by the harasser and/or the organization. One of the potential drivers of this fear is that sexual harassment is often trivialized by organizations or results in hostility and retaliation against the victim. Unfortunately, the more powerful the harasser, the greater the fear of retaliation for reporting.

21.     The bystander effect is another potential factor that causes sexual harassment to go unreported. This means that others are less likely to help the victim of sexual harassment when others are present. The bystander effect occurs for two reasons – diffusion of responsibility (i.e. feeling like the others present will do something) and social influence (i.e. if no one else intervenes to assist the victim, others feel like failing to intervene is correct). The failure to intervene then tells the victim that the behavior is condoned by the observers who failed to intervene, which discourages the victim from reporting.

22.    Particularly for those in predominantly masculine industries such as law enforcement, men tend to use subjugation of women as a way to relate to other men and prove masculinity, while reinforcing the lower status of women. Women who want to be part of the higher status group will then play along with sexual harassment because they do not want to be further alienated from the high status group (the male coworkers). In other words, female victims of sexual harassment play along in order to be seen as "one of the guys."

23.    The Harvard study cited above explains that organizations can decrease sexual harassment in the organization and better encourage women to report sexual harassment by providing better training (e.g., training that targets the bystander effect), developing clearer HR and reporting systems, and assessing and improving the organization's culture. Due in part to the Defendants' failure to have these safeguards in place, the Plaintiff was the victim of sexual harassment and sexual assault.

24.    Taxpayers should also be concerned with workplace sexual harassment, as the Harvard study estimated in 2016 that sexual harassment costs organizations $22,500.00 a year in lost productivity *for each employee affected*, among other negative consequences. That figure is certainly higher in today's dollars.

## FACTUAL ALLEGATIONS

25.    The following is a chronological summary of the sexual harassment, sexual battery, and events to which Plaintiff fell victim:

a.    On August 10, 2020, Plaintiff (who was 19 years old at the time) was hired as a Detention Deputy by Laurens County. On her first day of work, the Training Lieutenant of the LCDC, Defendant Lawson, met with Plaintiff. Lawson informed Plaintiff that she would undergo training on a number of different law enforcement topics. At this time, Lawson informed Plaintiff that Tollison would be giving her pat down/search training and taser certification training.

b.    Plaintiff was instructed by Lawson to accompany Tollison to the "uniform room" so that she could be measured by him for a uniform. There were no other deputies or people in the room. The room was locked and Plaintiff did not have a key so that she could leave.

c.    While alone in the locked uniform room with Tollison for the "uniform fitting," Plaintiff was instructed by Tollison to pull her pants down, so that he could obtain an accurate measurement for her inseam. Plaintiff complied with these instructions and pulled her pants down.

d.    On Monday, August 17, 2020, Plaintiff arrived at the LCDC and was again instructed by Lawson to meet with Tollison to participate in pat down/search training and Taser Training.  After the class portion was completed, Plaintiff was instructed by Lawson to go to the "uniform room" with Tollison. Plaintiff was again alone in the locked uniform room with Tollison. Plaintiff did not have a key to this room so that she could leave.

e.      Tollison then began his "instruction" on how to conduct "pat-downs." He gave Plaintiff several objects to hide on her person. At his instruction, Plaintiff hid these items on her ankle, belt, pockets, and shoulder.

f.      Tollison proceeded to use his hands inappropriately to touch all parts of Plaintiff's body including but not limited to her: breasts, legs, thighs, buttocks, stomach, and in between her legs for the alleged purpose of retrieving the hidden items.

g.      Tollison then proceeded to hide things on his person. Tollison instructed Plaintiff to retrieve the items hidden on his body. Plaintiff was instructed to search for the hidden items in the same areas of Tollison's body that he had touched on her. Tollison repeatedly stated that Plaintiff had missed items and instructed her to keep searching and touching his body. After Plaintiff did not locate the hidden items, Tollison pulled an item out from under his pants belt loop.

h.      Tollison then instructed Plaintiff to accompany him in a Laurens County vehicle to pick up her uniform boots from a store in Spartanburg, South Carolina. In reality, Tollison had not ordered Plaintiff's boots from this store. This was simply a guise to get Plaintiff in a Laurens County vehicle to be alone with him.

i.      During the ride in the Laurens County vehicle, Tollison asked Plaintiff several personal and inappropriate questions. For example, Tollison asked Plaintiff whether she had a boyfriend and wanted to know where she

lived. Tollison then proceeded to ask Plaintiff how she felt about the "pat-down" training and how far she was willing to go. Plaintiff informed Tollison that she felt that she had already learned how to conduct a "pat-down." Despite being informed of this, Tollison told Plaintiff that they needed to go back over the pat downs when they returned to the LCDC and that he was going to "make it hard."

      j.     When Plaintiff was brought back to the LCDC, she was again put in the locked uniform room by herself with Tollison.

      k.     Tollison then began the "pat-down" training for the second time by picking up objects and hiding them on his person. Plaintiff was instructed to search Tollison by touching his entire body. Plaintiff was informed by Tollison that she missed a couple of items.

      l.     Tollison then told Plaintiff that he would help her find the items on him that she did not locate. Tollison then dropped his pants exposing his penis on which he had placed a black band. He removed the black band from his penis and pulled his pants up.

      m.     Tollison then informed Plaintiff that it was her turn to hide objects. Tollison instructed Plaintiff to hide more objects on her person and to make it difficult to find these objects.

      n.     One of the items Plaintiff was instructed to hide was a silver metal object. Tollison suggested that Plaintiff hide this object in her vaginal cavity

and he instructed her to "stick it in as far" as she could. Despite these instructions, Plaintiff did not hide the object in her vaginal cavity. Tollison also instructed Plaintiff to hide an object underneath her bra.

o.     Plaintiff then hid the items on her ankle, pockets, belt, belt loops, shoulder, and hid the metal piece in her waistline near her belt.

p.     Tollison then began searching Plaintiff's body by placing his hands all over her body, including but not limited to her breasts, legs, thighs, buttocks, stomach, and in between her legs for the alleged purpose of retrieving the hidden items.

q.     As Tollison was searching Plaintiff's body, he instructed Plaintiff to remove her shirt and bra. He then instructed her to pull her pants down, squat and cough three times which exposed her vagina and buttocks.

r.     Tollison then touched Plaintiff between her legs. Plaintiff grabbed her clothing and started getting dressed. Plaintiff attempted to leave the room, but the door was locked. Tollison then opened the door and allowed Plaintiff to leave the room. As she was leaving the room, Tollison looked at her and stated, "you need to get you some."

s.     Cogdill was the direct supervisor of Tollison and was at all relevant times aware that Tollison was taking Plaintiff to secluded and unsupervised areas of the LCDC for alleged pat down/search training.

t.      After being subjected to the foregoing, Plaintiff was then tased by Tollison to finish her Taser training.

u.      Upon information and belief, prior to the sexual harassment and assault of Plaintiff, female correctional officers and inmates were routinely subjected to sexual harassment by Tollison and other LCSO employees.

v.      Throughout the time period of Tollison's employment, female correctional officers were instructed to change clothes in Tollison's Laurens County office. Unbeknownst to these female officers, they were being video recorded in various stages of undress on Tollison's Laurens County laptop.

w.      Several weeks after the above-described events, Plaintiff informed her supervisors of this sexual assault and harassment by Tollison. Plaintiff was instructed by her supervisors to not to discuss these events with anyone. Plaintiff was not informed of her rights as a crime victim or as a county employee.

x.      On October 29, 2020, Tollison was charged with multiple counts of Misconduct in Office and Voyeurism. On September 13, 2022, Tollison pled guilty to six counts of Misconduct in Office and five counts of Voyeurism.

y.      Laurens County denied Plaintiff important rights as a victim of the crimes committed by Tollison. Plaintiff was not notified of court dates; she was not consulted regarding the disposition of the charges against Tollison; she was not provided any assistance to receive counseling; and Tollison was not charged appropriately in light of the crimes committed against her.

z.      Subsequent to August 2020, Lawson was promoted to a more senior position within LCSO.

26.    At all times material hereto, Laurens County was responsible for the LCSO, and specifically the Sheriff, as well as the LCSO's agents and employees, including hiring, supervising, overseeing, training and establishing policies, customs, and procedures to conform their conduct to the applicable laws.

27.    The Sheriff was the final policymaker for Laurens County regarding law enforcement policies and acts, including LCSO employment decisions.

28.    The Sheriff failed to implement an effective sexual harassment policy, procedure, and/or practice that would protect employees from victimization and allow victims of sexual harassment to report same. This effectively deprived Plaintiff of the opportunity to report the above-referenced conduct to anyone and violated Plaintiff's rights.

29.    Laurens County's policies, procedures, customs, and practices of condoning unlawful and improper acts by their employees and LCSO employees, of failing to identify, train, discipline, and otherwise properly supervise officers who have engaged in unlawful and unjustified acts, and specifically of condoning and failing to appropriately respond, through discipline, training, supervision, or otherwise, to the prior misconduct of Defendant Tollison and other employees were a moving force behind the victimization of Plaintiff.

30.     Laurens County displayed deliberate indifference to the rights of Plaintiff by allowing Defendant Tollison to possess law enforcement authority despite his reputation and his prior history of being unfit for the position.

31.     At all times material hereto, various employees of LCSO and Laurens County, were responsible for the LCSO, and specifically the Sheriff, as well as the LCSO's agents and employees, including hiring, supervising, overseeing, training and establishing policies, customs, and procedures to conform their conduct to the applicable laws.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983-Violation of Civil Rights- Unlawful Search and Seizure
### (Against Defendant Tollison)

32.     Plaintiff incorporates the foregoing paragraphs as if repeated here, verbatim.

33.     Defendant Tollison personally, recklessly, maliciously, and under color of state law deprived Plaintiff of her liberty rights under the Fourth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, by forcing Plaintiffs to undergo an invasive strip search in a locked room without a warrant or any probable cause to believe Plaintiff committed any crime.

34.     Defendant Tollison, in the course of his employment, forced Plaintiff to undergo an invasive strip search without even a rational basis for his action.

35.     Plaintiff was under duress and did not voluntarily consent.

36.     Defendant Tollison's actions against Plaintiff were intentional, malicious, and in reckless and willful disregard for her rights to be free from such unlawful action.

37.     As a direct and proximate result of the deprivation of Plaintiff's civil rights committed by Defendant Tollison, Plaintiff has suffered injury to her person.

38.     As a direct and proximate result of the unconstitutional conduct of the Defendant Tollison, the Plaintiff seeks actual, and compensatory damages, as well as attorney's fees and costs.

39.     Defendant Tollison's actions against Plaintiff were intentional, malicious, and in reckless disregard for her rights to be free from such unlawful action. Therefore, Plaintiff is also entitled to recover punitive damages against Tollison in an amount determined by the jury, sufficient to deter Defendant Tollison and others from engaging in such unlawful actions in the future.

40.     This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983-Violation of Civil Rights- Invasion of Privacy
(Against Defendant Tollison)

41.     Plaintiff incorporates the foregoing paragraphs as if repeated here, verbatim.

42.     Pursuant to the Fourteenth Amendment of Constitution, Plaintiff at the applicable times had the right to privacy and body integrity.

43.     Defendant Tollison, acting under the color of state law, personally, deliberately, recklessly, and maliciously deprived Plaintiff of her rights under the Fourth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, by forcing Plaintiff to endure inappropriate and unwanted touching during alleged pat down training which deprived Plaintiff of her Constitutional right to privacy and to be free from sexual assault and battery, in violation of 42 U.S.C. § 1983.

44.     Defendant Tollison invaded Plaintiff's privacy by inappropriately touching Plaintiff with his hands all over parts of her body, including but not limited to her breasts, legs, thighs, buttocks, stomach, and in between her legs for the alleged purpose of retrieving the hidden items during training.

45.     Plaintiff did not voluntarily consent to being touched.

46.     In depriving the Plaintiffs of her rights, Defendant committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiff's human, safety, and property rights.

47.     Any reasonable person would be aware that the above-described conduct violated the Plaintiff's civil rights.

48.     As a direct and proximate result of the deprivation of Plaintiff's civil rights committed by Defendant Tollison, Plaintiff has suffered injury to her person.

49.     As a direct and proximate result of the unconstitutional conduct of these Defendant Tollison, the Plaintiff seeks actual, and compensatory, as well as attorney's fees and costs.

50.    Defendant Tollison's actions against Plaintiff were intentional, malicious, and in reckless disregard for her rights to be free from such unlawful action. Therefore, Plaintiff is also entitled to recover punitive damages against Tollison in an amount determined by the jury, sufficient to deter Defendant Tollison and others from engaging in such unlawful actions in the future.

51.    This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

### THIRD CAUSE OF ACTION
### 42 U.S.C. 1983 – Equal Protection
### (Against Defendant Tollison)

52.    Plaintiff incorporates the foregoing paragraphs as if repeated here, verbatim.

53.    Intentional sexual harassment of employees by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under § 1983.

54.    Through the actions set forth above, Defendant Tollison acting under the color of state law, personally, deliberately, recklessly, and maliciously invaded Plaintiff's constitutional Fourteenth Amendment rights.

55.    Plaintiff was member of a protected group.

56.    Defendant Tollison was Plaintiff's supervisor.

57.    Defendant Tollison, acting under the color of state law, personally, deliberately, recklessly, and maliciously targeted Plaintiff because of her gender and

subjected her to unwelcome and demeaning sexual harassment when he: (a) exposed his penis to Plaintiff during pat down training; (b) performed a strip search on Plaintiff under the guise of training; (c) asked Plaintiff to undress to be measured for a uniform; (c) made extremely vulgar and sexual comments to Plaintiff and about her; and (d) asked Plaintiff to inappropriately touch him during training.

58.    Further, Defendant Tollison contrived situations that subjected Plaintiff to being alone with him in a LCSO automobile and a locked room under the guise of training so that he could more easily sexually harass her.

59.    Through his actions, Defendant Tollison created a work environment and atmosphere saturated with sexual suggestions, innuendos, and propositions.

60.    Defendant Tollison created a hostile or abusive work environment that affected Plaintiff's term, condition, or privilege of employment.

61.    Defendant Tollison committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiff's rights.

62.    Any reasonable person would be aware that the above-described conduct violated the Plaintiff's civil rights.

63.    As a direct and proximate result of the deprivation of Plaintiff's civil rights committed by Defendant Tollison, Plaintiff has suffered injury to her person.

64.    As a direct and proximate result of the unconstitutional conduct of these Defendant Tollison, the Plaintiff seeks actual, and compensatory, as well as attorney's fees and costs.

65.     Defendant Tollison's actions against Plaintiff were intentional, malicious, and in reckless disregard for her rights to be free from such unlawful action. Therefore, Plaintiff is also entitled to recover punitive damages against Tollison in an amount determined by the jury, sufficient to deter Defendant Tollison and others from engaging in such unlawful actions in the future.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983-Violation of Civil Rights – Failure to Intervene
### (Against Defendants Sheriff Reynolds, Lawson, and Cogdill)

66.     Plaintiff incorporates the foregoing paragraphs as if repeated here, verbatim.

67.     Through the actions set forth above, Defendant Tollison acting under the color of state law, personally, deliberately, recklessly, and maliciously invaded Plaintiff's constitutional right to privacy.

68.     In the face of widespread misconduct and abuses, Defendants Sheriff Reynolds, Lawson, and Cogdill's response was so inadequate so as to amount to deliberate indifference to or tacit authorization of the offensive conduct.

69.     Defendants LCSO, the Sheriff, Lawson, and Cogdill had a reasonable opportunity to intervene or prevent the harm but choose not to act.

70.     Defendants Sheriff Reynolds, Lawson, and Cogdill's failure to intervene caused the deprivation of Plaintiff's constitutional rights.

71. Wherefore, as a direct and proximate result of Defendants Sheriff Reynolds, Lawson, and Cogdill's failure to intervene, Plaintiff has suffered damages.

72. As a direct and proximate result of the deprivation of Plaintiff's constitutional rights committed by Defendants, Plaintiff has suffered injury to her person.

73. Defendants' actions against Plaintiff were intentional, malicious, and in reckless disregard for her rights to be free from such unlawful action. Therefore, Plaintiff is also entitled to recover punitive damages against these Defendants in an amount determined by the jury, sufficient to deter Defendant Tollison and others from engaging in such unlawful actions in the future.

74. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

**FOURTH CAUSE OF ACTION**
**42 U.S.C. § 1983-Monell Claim**
**(Against Defendants Sheriff Reynolds and LCSO)**

75. Plaintiff incorporates the foregoing paragraphs as if repeated here, verbatim.

76. Defendants Sheriff Reynolds and LCSO's official and unofficial policies and customs encouraged, caused, allowed, and/or enabled Defendants Tollison, Lawson, and Cogdill to violate Plaintiff's constitutional rights without fear of discipline for those violations. *See Monell v. Dep't of Soc. Servcs.*, 436 U.S. 658 (1978).

77.　　Defendants Sheriff Reynolds and LCSO are responsible for LCSO's supervision, training, and discipline through their final policymaking authority and personnel decisions.

78.　　The policy, pattern of practice, or custom of misconduct being condoned or tacitly approved by Defendants Sheriff Reynolds and LCSO, as evidenced by the conduct of Defendant Tollison and the Defendants' failure to train, supervise, investigate, and discipline any of the officers involved in this incident.

79.　　The unconstitutional behavior of LCSO officers is carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons such as the Plaintiff.

80.　　Defendants Reynolds and LCSO also failed to take sufficient remedial actions to end this policy, pattern of practice, or custom within the LCSO.

81.　　Further, Defendants Reynolds and LCSO failed to train LCSO employees with respect to a clear constitutional duty that would arise in situations that its employees are certain to face.

82.　　The policy, pattern of practice, or custom; failure to train; condoning of misconduct; and the failure to end this policy, pattern of practice, or custom evinces deliberate indifference to Plaintiff's constitutional rights and was a proximate cause of the injuries suffered by Plaintiff.

83.　　Defendants Sheriff Reynolds and LCSO's callous, deliberate, reckless, wanton, and malicious actions under the color of state law before, during, and after this

loss, has caused Plaintiff to suffer and continue to suffer the damages Plaintiff has described herein.

84.     As a direct and proximate result of the unconstitutional conduct of these Defendants, the Plaintiff seeks, actual, and compensatory, as well as attorney's fees and costs. Plaintiff also seeks all other available damages, including any noneconomic or economic damages available to her.

85.     These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. §1983.

**FIFTH CAUSE OF ACTION**
**Battery**
**(Against Defendant Tollison)**

86.     Plaintiff incorporates the foregoing paragraphs as if repeated here, verbatim.

87.     Defendant Tollison, using his authority and position of trust as a supervisor of Plaintiff and as a result of the performance of his agency duties for Defendants, forced Plaintiff to engage in official activities in a manner so as to obtain his sexual gratification.

88.     Defendant Tollison's acts of intentional sexual abuse constituted unlawful, harmful, and offensive touching, to which Plaintiff did not consent.

89.     Defendant Tollison used the performance of his agency duties on behalf of Defendants to accomplish his acts of sexual abuse of Plaintiff.

90.     As a result of Defendant Tollison's sexual battery, Plaintiff has suffered damages described herein.

91.    At no time during the events described herein, nor at any time prior thereto, did Plaintiff consent to the unlawful battery by Defendant Tollison.

92.    As a direct and proximate result of the aforementioned physical assault and battery, Plaintiff has suffered actual damages including, but not limited to:

    a.  mental pain and suffering;

    b.  emotional distress;

    c.  fright;

    d.  nervousness;

    e.  indignity;

    f.  humiliation;

    g.  embarrassment;

    h.  insults; and

    i.  injury to personal and professional reputation.

**93.**    As a direct and proximate result of Defendant Tollison's negligent, careless, reckless, and wanton actions, Plaintiff is also entitled to punitive damages in an amount sufficient to deter him and others from engaging in similar conduct in the future.

<u>**SIXTH CAUSE OF ACTION**</u>
<u>**Intentional Infliction of Emotional Distress**</u>
**(Against Defendant Tollison)**

94.    Through the sexual harassment of Plaintiff, Defendant Tollison intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from this conduct.

95.    Plaintiff was in a special relationship with Defendant Tollison based on her employment with LCSO.

96.    Defendant's actions caused Plaintiff severe emotional distress when he intentionally invaded aspects of her life that were private and which Plaintiff would normally expect to be free from exposure to the Defendant.

97.    Defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community.

98.    Plaintiff has suffered and continues to suffer from severe emotional distress, including, but not limited to, grief, anxiety, shock, humiliation, embarrassment, shame, and feelings of powerlessness.

99.    Plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it.

100.    Plaintiff suffered presumed, actual, and punitive damages from Defendant's intentional infliction of emotional distress.

## SEVENTH CAUSE OF ACTION
### Constructive Fraud/Misrepresentation
**(Against Defendant Tollison)**

101.    Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

102.    Plaintiff was in a special relationship with Defendant Tollison based on Plaintiff's employment and the fact that she was supervised by him.

103.    Defendant Tollison actively misrepresented the training Plaintiff was required to complete. During her training, Plaintiff was directed to change clothes in Defendant Tollison's office. There was a camera and/or recording device on a Laurens County laptop located in his office which was routinely used to record female employees while they undressed. Tollison also falsely represented to Plaintiff that she needed to disrobe for pat down training and also to be measured for a uniform. Defendant Tollison invaded aspects of Plaintiff's life that were private and which Plaintiff would normally expect to be free from exposure to Defendant Tollison.

104.    An objective, reasonable person would have viewed the presence of the cameras and/or recording devices and their active recording inside Defendant Tollison's office as sufficiently important and significant that it would have played a role in the decision to enter into the office to change clothing.

105.    Defendant Tollison knowingly did not disclose the presence of any security cameras or recording devices in his office where Plaintiff was instructed to change clothes, despite their duty to do so. Defendants intended to have Plaintiff change clothes in his office and had reason to expect that she would have refrained from doing so if she was made aware of the actively recording camera or other recording device that was located in there.

106.    Plaintiff was not provided written notice of any type of camera or other recording device in or around Defendant Tollison's office.

107.    Plaintiff relied on the integrity and honesty of the Defendant Tollison and expected to change clothes in his office free of any intrusion into her privacy, and she had a right to rely on an understanding that aspects her life that were private would be free from exposure to the Defendant.

108.    Defendant acted in reckless and conscious disregard of Plaintiff's rights.

109.    As a direct and proximate result of Defendant's actions, Plaintiff is entitled to recovery for her damages to be proven at trial.

110.    Defendant committed these acts in conscious disregard for Plaintiff's rights.

111.    Plaintiff is entitled to an award of punitive damages.

**WHEREFORE**, having fully set forth the grounds in her Complaint, Plaintiff requests a jury trial and asks the Court to award the following:

1.    Actual damages;

2.    Punitive damages in an appropriate amount against the Defendants, jointly and severally;

3.    Attorney's fees and costs; and

4.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,


s/Deborah B. Barbier
Deborah B. Barbier (#6639)
DEBORAH B. BARBIER, LLC
1811 Pickens Street
Columbia, South Carolina 29201
803-445-1032
dbb@deborahbarbier.com

s/Cindy S. Crick
Cindy S. Crick (SC#70233 FED#13076)
CINDY CRICK LAW, LLC.
416 East North Street, 2nd Floor
Greenville, South Carolina 29601
(864) 775-5788
cindy@cindycricklaw.com

March 29, 2023