IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Brittany Cash,<br><br>Plaintiff,<br><br>v.<br><br>Laurens County, South Carolina; Laurens County Sheriffs Office; Phillip Tollison; Sheriff Don Reynolds; Vera Lawson; Joshua Cogdill; Scott Weeks; and Don Evans,<br><br>Defendants | No. 6:23-cv-01235-DCC<br><br>**OPINION AND ORDER** |

This matter is before the Court for review of the Magistrate Judge's Report and Recommendation. ECF No. 221. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for pre-trial proceedings and a Report and Recommendation ("Report"). On June 16, 2026, the Magistrate Judge issued a Report as to Defendants'[1] Motion for Summary Judgment recommending that the Court deny in part and grant in part the Motion. *See* ECF No. 221. Both Plaintiff and Defendants filed Objections to the

[1] Defendant Phillip Tollison ("Tollison") did not join the other Defendants as to the pending Motion and Plaintiff's claims against him do not appear to be at issue in this Motion. *See* ECF Nos. 43, 210, 213, 220. For purposes of this Motion, the Court's reference to "Defendants" includes Defendants Laurens County, South Carolina ("Laurens County"); Laurens County Sheriff's Office ("LCSO"); Sheriff Don Reynolds; Vera Lawson; Joshua Cogdill; Scott Weeks; and Don Evans. The Court refers collectively to Sheriff Reynolds, Lawson, Cogdill, Weeks, and Evans as the "individual Defendants."

Report. ECF Nos. 223, 224. Plaintiff and Defendants each filed Replies. ECF Nos. 230, 231.

Upon initial review of the Report, the Court recommitted the matter to the Magistrate Judge for a Supplemental Report and Recommendation ("Supplemental Report") on the issue of whether summary judgment should be granted as to Defendant Laurens County and/or whether Plaintiff should be granted leave to amend her Complaint. ECF No. 232. The Magistrate Judge filed a Supplemental Report on September 9, 2026. ECF No. 234. Plaintiff filed Objections, and Defendants filed a Reply. ECF Nos. 236, 237. For the reasons set forth below, the Court adopts in part and declines to adopt in part the Magistrate Judge's Report and adopts the Supplemental Report to the extent explained below.

## I. BACKGROUND

The Magistrate Judge provides a thorough recitation of the facts of this case and the applicable law in the Report, which the Court incorporates by reference and supplements as needed below.[2] Because the Parties filed Objections, the Court's review has been de novo.

## II. APPLICABLE LAW

The Magistrate Judge makes only a recommendation to this Court. The

[2] The Court notes that Plaintiff specifically objected to portions of the Magistrate Judge's recitation of facts. ECF No. 223 at 29–31. The Court declines to adopt portions of the recitation of facts by the Magistrate Judge as set out more fully in the discussion of the facts and evidence as to each claim below. Accordingly, Plaintiff's objection is sustained as to these factual recitations. As to any facts not specifically addressed below to which Plaintiff objected, the Court finds that these factual recitations are an accurate reflection of the evidentiary record, and Plaintiff's objection is overruled as to these factual recitations.

recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) ("[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

## III. DISCUSSION

The Magistrate Judge recommends that Defendants' Motion for Summary Judgment be denied as to Plaintiff's *Monell* claim against Defendants Sheriff Reynolds and LCSO based on failure to supervise. *See* ECF No. 221. The Magistrate Judge recommends that Defendants' Motion be granted as to all of Plaintiff's other claims against Defendants, including Plaintiff's claims for failure to intervene in violation of 42 U.S.C. § 1983 and *Monell* claims based on custom or usage and failure to train. *See id.* As to whether summary judgment should be granted for Defendant Laurens County, the Magistrate Judge recommends that "Plaintiff's request to amend her amended complaint to assert her *Monell* cause of action against Laurens County be denied as not properly before the court, untimely, and futile, and that summary judgment be granted for Laurens County" on that ground, or in the alternative, that summary judgment be granted as to

Defendant Laurens County on the merits for the reasons discussed in the Report and Supplemental Report. ECF No. 234 at 6–7.

Plaintiff filed Objections to the Magistrate Judge's Report, specifically objecting to the recommendation concerning the consideration of reasonable inferences arising from Defendants' spoliation of evidence and recommendation to grant summary judgment as to her claims against Defendants for failure to intervene and *Monell* claims based on custom or usage and failure to train. *See* ECF No. 223. As to the Supplemental Report, Plaintiff objects on the grounds that her *Monell* claim was sufficiently, albeit not explicitly, pled against Laurens County; leave to amend is warranted and appropriate; and, on the merits, there is a genuine dispute of fact as to Laurens County's individual liability. ECF No. 236 at 2–8.

Defendants specifically objected to the recommendation that summary judgment be denied as to Plaintiff's *Monell* claim based on failure to supervise. ECF No. 224. Additionally, Defendants assert that they are entitled to qualified immunity and that they are entitled to summary judgment on Plaintiff's claim for damages for lost income as a Class I law enforcement officer. *See id.* at 11–13.

The Court addresses these objections in turn below.[3]

[3] Plaintiff brings her claims against the individual Defendants in both their individual and official capacities and seeks damages in the form of monetary relief. ECF No. 43 at 3–5, 27–28. Although not addressed by Plaintiff's Response, the Report, or the Objections, it appears that Defendants also moved for summary judgment on Plaintiff's § 1983 claims to the extent that these claims were brought against the individual Defendants in their official capacities. *See* ECF Nos. 210-1 at 14, 19, 22, 24; 213; 221; 223; 224. Section 1983 permits suit against "every person" who deprives an individual of his or her rights under color of state law. *Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020). However, neither States nor state officials acting in their official capacities constitute "persons" within the meaning of the statute when sued for monetary relief. *Id.*

**A. Consideration of Spoliation at Summary Judgment**

Plaintiff objects to the Magistrate Judge's consideration of evidence that was spoliated by Defendants in recommending that summary judgment be granted as to some of Plaintiff's claims. *See* ECF No. 223 at 2–8. Plaintiff contends that the Magistrate Judge misunderstood Plaintiff's spoilation argument and that she is not seeking an adverse inference or for the Court to presume that the destroyed evidence was unfavorable to Defendants. *Id.* at 2, 4. Rather, Plaintiff requests that the Court apply Federal Rule of Civil Procedure 56's summary judgment standard, which provides that all reasonable factual inferences be made in her favor as the nonmoving party. *Id.* at 3. Plaintiff argues that by disregarding the evidentiary consequences of the spoliation in evaluating whether summary judgment was appropriate, the Magistrate Judge made impermissible inferences in Defendants' favor, which she claims is the opposite of what is required at the summary judgment stage. *Id.* at 4. According to Plaintiff, a reasonable jury could conclude that the destroyed communications, emails, text messages, and data that were spoliated would have supported Plaintiff's claims, especially given that the Court found this destroyed evidence was relevant and its loss resulted in prejudice to Plaintiff. *Id.* Thus, Plaintiff argues that it was error for the Magistrate Judge to rely on lack of evidence in this instance to find there was no dispute of material fact, especially where a jury could find that Plaintiff's allegations concerning prior incidents, communications among supervisors, and a broader pattern and practice could have been corroborated by evidence that was spoliated. *Id.* at 7–8.

---

Accordingly, to the extent that Plaintiff brings her § 1983 claims against the individual Defendants in their official capacity, summary judgment is appropriate.

Defendants argue that, even though she cabins her argument for consideration of spoliated evidence in the language of Rule 56, Plaintiff is actually seeking a presumption that the evidence was unfavorable to them under Federal Rule of Civil Procedure 37, which the Court has already declined to do. ECF No. 230 at 2–7. Defendants contend that an inference that the spoliated evidence may have been favorable to Plaintiff is not enough to create a question of fact, especially where, as here, the Court found that the amount of prejudice, if any, caused by the spoliation was speculative. *Id.* at 3–4. Because of the amount of prejudice was speculative, Defendants argue that the case law relied upon by Plaintiff is readily distinguishable because in those cases the parties knew what evidence had been destroyed and how it impacted the plaintiff's claims whereas here, missing data could include relevant evidence but it is unclear how much impact it would have on Plaintiff's pending claims. *Id.* at 5–7. Even under Rule 56's favorable inference guidance, Defendants argue that this inference is based on the interpretation of evidence in the record and, even though spoliation potentially caused some evidence to be unavailable for the record, Plaintiff must still show a likelihood that the lost evidence would have been favorable. *Id.* at 7. Further, Defendants assert that even if an adverse inference had been imposed, it does not amount to proof of a fact essential to Plaintiff's cause of action at summary judgment. *Id.* at 3.

The Court previously found that Defendants had spoliated electronically stored information ("ESI") after they had notice of this litigation in violation of Rule 37(e) but noted that the failure to preserve ESI was unintentional. ECF No. 199 at 15, 18–19. The Court found that "Plaintiff was prejudiced by Defendants failure to preserve ESI" but that "the extent of any prejudice at this point is largely conjectural as the extent of relevant

information, if any, on any of the destroyed devices of related communications is speculative . . . ." *Id.* at 18. Specifically, the Court found that the following evidence had been spoliated by Defendants: all ESI that was lost or destroyed after Plaintiff's preservation letter was sent in November 2022, including ESI from ten different devices, including laptops, cell phones, an iPad, and SD cards, recovered by SLED during its criminal investigation of Tollison, which were all destroyed in the ordinary course of business by Defendants despite having received a preservation letter from Plaintiff. *Id.* at 15–17. As a sanction for the spoliation, the Court found that "Defendants will not be allowed to refer to or rely upon any claimed communication or policy not properly preserved." *Id.* at 28–29. Additionally, the Court held that this "decision does not prejudice Plaintiff from pursuing a spoliation instruction at trial if she so chooses." *Id.* at 21 n.7. However, because the spoliation was unintentional, the Court found that a presumption that the lost information was unfavorable to Defendants would not be appropriate in this case. *Id.* at 19–20 (explaining that Defendants' conduct does not merit more severe sanctions available under Rule 37(e)(2)).

The Court finds that Plaintiff's inference argument based upon Rule 56, at a minimum, treads dangerously close to imposing a presumption that the lost information was unfavorable to Defendants, which the Court has already thoroughly explained was inappropriate under the circumstances. *See id.* Plaintiff is correct that, when determining whether a genuine issue has been raised, the Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the non-moving party, to survive the motion for summary judgment, also may not rest on allegations, but must instead

demonstrate specific, material facts exist that give rise to a genuine issue and the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Without pointing to any other evidence concerning what exactly was destroyed or showing that what was destroyed would have been helpful to her case, Plaintiff asks the Court to speculate that the destroyed evidence would have been favorable to her under the guise of a Rule 56 favorable inference. However, this is the very implication of a presumption the evidence would have been unfavorable to Defendants that the Court declined to impose as a sanction as set out above and in the Court's prior Order. The fact that the Court found there has been spoliation in this case, while it may be considered in making inferences about the facts in evidence, does not lessen Plaintiff's burden in response to Defendants' assertion that there is no evidence in the record to support a material part of her claim.

Indeed, under the facts and circumstances of this action where the destruction was unintentional, it is unclear exactly what was lost, and the Court has already recognized that the amount of prejudice is speculative at best, the Court cannot say that the spoliation alone, without more, is more than a mere scintilla of evidence in support of Plaintiff's position. Just because information within the spoliated evidence would have been relevant in evaluating Plaintiff's claims, and, thus, it was prejudicial to her to not have the opportunity to review it, does not equate to showing or even creating an inference that it would have been dispositive or created a genuine issue of material fact. This is what distinguishes this action from the cases relied upon by Plaintiff as those cases all involved

destruction of evidence that the plaintiff had demonstrated was likely to be material, not just relevant, to the claims at issue. *See Ecolab Inc. v. Ridley*, No. 1:22-cv-50, 2024 WL 2708740, *6, 9–11 (E.D. Tenn. Mar. 12, 2024) (evaluating the parties' cross-motions for summary judgment on claims for misappropriation of trade secrets where the offending former employee allegedly downloaded thousands of company files and customer information to an external hard drive in light of spoliation of evidence including the very hard drive at issue and declining to grant summary judgment because the spoliated evidence bore directly on whether the defendants possessed plaintiff's trade secrets); *Robinson v. Anderson*, C/A No. 7:24-cv-00053, 2026 WL 560361, at *5, 6 (W.D. Va. Feb. 26, 2026) (addressing a motion for evidentiary hearing and sanctions based on the defendants' failure to preserve surveillance footage that was known to exist and that directly implicated disputed issues and explaining in its consideration of spoliation of this evidence that the moving party must "demonstrate a likelihood that the lost evidence would have been favorable to the moving party's case" (citation omitted)).

While the Court certainly considers the spoliation when making inferences about the evidence or lack thereof as to the elements of each claim, it declines to find that the spoliation alone means that Defendants can no longer rely on an absence of evidence as a basis for summary judgment on a claim. This would be the equivalent of imposing an adverse presumption against Defendants. In light of this, the Court now considers each of Plaintiff's claims.

**B. Failure to Intervene**

Plaintiff asserts a claim for failure to intervene against Defendants Sheriff Reynolds, Lawson, Cogdill, Evans, and Weeks pursuant to § 1983. ECF No. 43 at 20–21.

As noted above, the Magistrate Judge recommends that summary judgment be granted as to this claim. ECF No. 221 at 13–16. Plaintiff objects to this recommendation. *See* ECF No. 223 at 23–27. Plaintiff asserts that the Magistrate Judge erred by improperly narrowing her theory of liability to cover merely whether the individual Defendants were present when Tollison assaulted her and failed to act; instead, she asserts that her theory of liability is premised on the allegations that the supervising officials created circumstances that made Tollison's conduct foreseeable and failed to intervene. *Id.* at 23. Specifically, Plaintiff argues that a question of material fact exists as to whether the individual Defendants knew or had reason to know that assigning an uncertified male supervisor to conduct pat-down training of a young female, contrary to policy and without supervision, created an obvious and unreasonable risk of constitutional injury. *Id.* at 24. According to Plaintiff, because there is evidence that the individual Defendants were aware of multiple policy violations prior to the assault and they continued to disregard these safety policies, a reasonable jury could conclude that they knew or should have known that another officer was violating a person's constitutional rights. *Id.* at 24–25. Further, Plaintiff argues that a reasonable jury could find that the individual Defendants had an opportunity to prevent this violation based on the office locations of Lawson and Weeks; their knowledge that Tollison was taking uniform measurements for female employees; their knowledge that Tollison was conducting training beyond the scope of his certification, including pat-down training; and their failure to confirm that the training complied with policy. *Id.* at 26.

In Reply, Defendants contend that the Magistrate Judge correctly recommends summary judgment be granted as to Plaintiff's failure to intervene claim. *See* ECF No.

230 at 19–23. Defendants argue that the policy violations that Plaintiff relies on all occurred on the same day as the incident between Plaintiff and Tollison. *Id.* at 20–21. Defendants contend that Plaintiff also overstates the Laurens County Detention Center's ("LCDC") pat-down policy with regard to pat-down searches, which does not outright prohibit opposite-sex pat-down searches but rather provides a preference for pat-down searches to be conducted by an officer of the same sex and that officers would be trained to professionally search both same sex, opposite sex, and cross-gender, transgender, and intersex inmates. *Id.* at 21. Defendants further assert that Plaintiff failed to present evidence to establish a question of material fact as she has failed to show how the individual Defendants' knowledge that Tollison was training her alone would make it so that they knew or should have known that a constitutional violation was being committed. *Id.* at 22. Additionally, Defendants, pointing to Plaintiff's admissions that Tollison took her into a closed room with no supervision, argue that there was no opportunity or ability to intervene or prevent harm even where Lawson's and Weeks's offices were nearby. *Id.*

A failure to intervene claim is "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *See Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416–17 (4th Cir. 2014) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). As the Fourth Circuit explained in *Randall*, "such a duty attaches when an officer observes or has reason to know that 'a constitutional violation [is being] committed' by other officers and possesses 'a realistic opportunity to intervene to prevent the harm from occurring.'" *Randall*, 302 F.3d at 203–04 (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). To state a claim for failure to intervene, a plaintiff must assert that an officer was (1) "confronted with a

fellow officer's illegal act," (2) "possesse[d] the power to prevent it," and (3) "cho[se] not to act." *Burley v. Balt. Police Dep't.*, 422 F. Supp. 3d 986, 1030 (D. Md. 2019) (quoting *Brooks v. Johnson*, 924 F.3d 104, 110 (4th Cir. 2019) (internal citation omitted)); *see also Randall*, 302 F.3d at 204.

In this case, the LCDC policy on pat-down searches in place at the time of the incident between Plaintiff and Tollison provided as follows: "Unless exigent circumstances exist, officers of the same sex as the inmate being searched will conduct all pat-down searches. Officers will be trained to professionally search both same sex, opposite sex, and cross-gender, transgender[,] and intersex inmates." ECF No. 213-9 at 1, 2. It further required that "[s]hould an officer of the opposite sex conduct a search due to exigent circumstances, the reasons for the use of an opposite sex officer will be documented in the inmate's booking record." *Id.* at 2. As to cross-gender pat-down searches, "[w]henever a cross-gender pat-down search is conducted, a supervisor or another officer will be called to witness the search. The witnessing supervisor or officer will be required to document their witness of the search in the inmate's booking record." *Id.* at 2. Though the policy provided that "[o]fficers will be trained to professionally search both same sex, opposite sex, and cross-gender, transgender[,] and intersex inmates," Defendants acknowledged there was no reason for a male officer to conduct pat-down training on a female officer because female officers were available to perform this training. ECF Nos. 213-9 at 1; 213-6 at 14.

It is disputed whether, despite these policies, Lawson instructed Tollison to perform one-on-one training, including pat-down training, with Plaintiff. *See* ECF Nos. 213-4 at 20, 37, 40; 210-2 at 15–16, 210-3 at 18. The training room at LCDC is ordinarily used for

instruction where anyone could easily observe whether training was occurring. ECF No. 213-5 at 9. Lawson's office was located immediately adjacent to the training room and Evans maintained an office nearby. ECF Nos. 213-2 at 31; 213-4 at 13. However, when Tollison performed the training with Plaintiff, he took her into a closed uniform room without any supervision. ECF No. 213-3 at 29, 31.

From a review of the facts and arguments of the Parties, it appears that Plaintiff attempts to convert her failure to train and failure to supervise claims into a failure to intervene claim without providing additional facts or evidence that would support the elements that distinguishes a failure to intervene claim from these types of claims—namely, Defendants' knowledge, actual or constructive, that *an illegal act* was being committed by a fellow officer and subsequent failure to do anything about it. *Stevenson*, 743 F.3d at 416–17. Here, the facts reveal at most that Lawson and perhaps Weeks were aware that Tollison was conducting Plaintiff's training, including pat-down training, alone and with a member of the opposite sex, which was contrary to the training practices and preferences in place at LCDC. There is no evidence that Evans, Reynolds, or Cogdill were aware that Tollison was conducting Plaintiff's training until after the fact. Even viewing the disputed evidence about whether Lawson directed Tollison to conduct this training, in the light most favorable to the non-moving party, knowing that Tollison was conducting Plaintiff's training alone and with a member of the opposite sex is not the equivalent of knowing that Tollison was committing an illegal act. Though the policies at issue and testimony of supervisors indicate that there is a strong preference for same-sex training unless there are exigent circumstances, training by a member of the opposite sex is not outright barred by the policy and further is not an illegal act.

There is also no evidence that any individual Defendant knew or had reason to know that, during this training, Tollison was inappropriately touching Plaintiff, directing her to remove her clothes, or removing his clothes. While Plaintiff contends the vicinity of Lawson's and Weeks's offices to the training room made it so that they reasonably should have intervened, Tollison did not commit these offenses in the training room but rather in a closed uniform room without supervision. Accordingly, there is no evidence that any individual Defendant witnessed the constitutional violations or were in close enough proximity where they had reason to know that a constitutional violation was occurring. Further, though the individual Defendants may have known that Tollison was conducting training beyond the scope of his certifications, this alone is not enough to support that a reasonable person in their position knew or should have known that Tollison was committing a constitutional violation during this training.[4] Indeed, the evidence of record supports the conclusion that the individual Defendants were unaware of Tollison's conduct until after Plaintiff reported him. ECF No. 210-3 at 21. Because none of the individual Defendants observed Tollison's conduct or even had reason to believe he was engaging in such conduct, they lacked the opportunity to intervene to prevent the harm. *See Randall*, 302 F.3d at 203–04. It is undisputed that no further misconduct occurred after Plaintiff's report because her claims were quickly addressed and Tollison resigned soon after. Thus, there is no evidence that supports the conclusion that Defendants "possessed 'a realistic opportunity to intervene to prevent the harm from occurring.'" *Id.*

---

[4] As discussed further below, this may have triggered the individual Defendants' awareness that they needed to exercise supervision or provide training to Tollison and other training officers about policies and procedures. However, as outlined herein, these failures are distinguishable from a failure to intervene.

Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's failure to intervene claim and her corresponding objection is overruled.

**C. *Monell* Claims**

Plaintiff also asserts *Monell* claims against Defendants Sheriff Reynolds and LCSO. ECF No. 43 at 21–23; *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978) (explaining that a local governing body "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" for alleged constitutional violations). Based on Plaintiff's claims and the Parties' arguments, it appears Plaintiff asserts three theories of liability to support this claim—execution of a custom or policy that inflicted injury, failure to train, and failure to supervise. *See* ECF Nos. 43 at 21–23; 210; 213. The Court addresses each of these theories in turn.

1. Custom or Usage Claim

Plaintiff objects to the Magistrate Judge's recommendation that summary judgment be granted in Defendants' favor as to her *Monell* claim based on custom or usage. ECF No. 223 at 9–16. Plaintiff asserts that the evidence of prior incidents of sexual misconduct by employees at LCDC is sufficient to create a question of material fact as to whether this type of conduct was widespread and flagrant such that there was a municipal custom or policy that normalized sexually inappropriate behavior. *Id.* at 9–13. Specifically, Plaintiff points to evidence of Tollison's prior assault of E.G.A., Tollison's secret recordings of female employees undressing, prior incidents involving sexual misconduct between employees and inmates, sexual harassment of a female deputy by another officer, testimony concerning "locker room talk" in the workplace, evidence that sexual harassment complaints were minimized, and evidence of the destruction of

disciplinary records concerning sexual misconduct after relatively short time periods. *Id.* at 10. Plaintiff asserts that this conduct is distinguishable from conduct in cases where the court found that the evidence of prior incidents was too attenuated and unrelated, because, here, all of the prior incidents involved sexual misconduct. *Id.* at 13–14. While Plaintiff acknowledges that Defendants Sheriff Reynolds and LCSO did mete out some discipline in response to prior misconduct, she contends that their disciplinary action was minimal and a material question of fact exists as to whether such discipline reflected deliberate indifference. *Id.* at 14–16.

In Reply, Defendants assert that Plaintiff's custom or usage claim fails because Plaintiff failed to produce evidence establishing a pattern of sexual misconduct that LCSO responded to with deliberate indifference based on municipal inaction. ECF No. 230 at 8–12. Specifically, Defendants argue that although the prior incidents touch or concern sexual misconduct, they are not necessarily related or relevant to Tollison's conduct in this action sufficient to demonstrate a pattern to support Plaintiff's custom or usage claim. *Id.* 10–11. Defendants further assert that the disciplinary action taken for each of the incidents of misconduct, including "up to termination and criminal charges," supports finding that Plaintiff's custom or usage claim fails. *Id.* at 11.

To assert a claim based on custom or usage, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). Under a theory of "custom by condonation," a municipality violates § 1983 if "municipal policy makers fail to put a stop to or correct a widespread pattern of unconstitutional conduct." *Owens v. Balt. City*

*State's Attys. Office*, 767 F.3d 379, 402 (4th Cir. 2014) (internal quotation marks omitted) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1389–90 (4th Cir. 1987)). A municipal custom may arise if unconstitutional practices become so "'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Monell*, 436 U.S. at 691) *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *see also Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted). Accordingly, "'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice." *Lytle*, 326 F.3d at 473. "Municipal fault for allowing such a developed 'custom or usage' to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." *Spell*, 824 F.2d at 1391; *see also Owens*, 767 F.3d at 402 (citing *Spell*, 824 F.2d at 1386–91).

The Court finds that Plaintiff's claim fails as to both elements of a custom or usage claim. As to the first element, although these incidents involved conduct of a sexual nature, the similarities as to almost all of the other incidents and the one between Tollison and Plaintiff stops there. Some of the prior incidents involved officers' interactions with inmates, and in all but one of the interactions appeared to be consensual, even if in violation of LCDC policy. ECF No. 210-2 at 21–28. Moreover, the one incident involving an officer's interactions with another officer is readily distinguishable because in that instance a male officer was disciplined for sexual harassment in the workplace for making a single inappropriate comment about a female deputy's body, not for continuously

harassing comments or assaulting another officer. ECF Nos. 210-2 at 29; 210-6 at 20–22; 213-15 at 1–2. Likewise, the evidence of "locker room talk" relied upon by Plaintiff is not the equivalent of continuously harassing comments or sexual assault. *See* ECF Nos. 213-4 at 30–31; 213-5 at 12, 14–17. Finally, Defendants' record keeping policies alone do not provide evidence that similar conduct by other individuals were condoned by Defendants without any additional evidence or even argument that those records contained conduct similar to Tollison's.[5]

Because this prior conduct is significantly different, in both context and degree, from Tollison's conduct with Plaintiff, the Court does not find that this conduct creates a question of material fact as to whether there was a pattern of sexual misconduct that was widespread or flagrant to support Plaintiff's custom or usage claim. *See, e.g.*, *Lytle*, 326 F.3d at 473 ("[T]here must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." (quoting *Kopf v. Wing*, 942 F.2d 265, 269 (4th Cir. 1991))); *B.R. v. F.C.S.B.*, No. 119CV917, 2023 WL 2464975, at *9 (E.D. Va. Mar. 10, 2023) (explaining that a prior incident of another parent reporting issues with her

[5] In response to the instant Motion, Plaintiff's reliance on LCDC policy regarding destruction of disciplinary records appears to be solely as evidence of Defendants' deliberate indifference regarding sexual misconduct. It does not appear that Plaintiff points to this destruction to assert that a reasonable factfinder could find that those documents contained evidence of similar sexual misconduct. As to the LCDC policy concerning destruction of disciplinary records, while this issue was raised in Plaintiff's Motion concerning spoliation in this case, it was raised only as a potential basis for finding prejudice based on the destruction of ESI and no spoliation argument was asserted that these documents were wrongfully destroyed by Defendants prior to Plaintiff being able to obtain them as evidence. *See* ECF No. 137-1 at 13 (arguing that for any forms that had been destroyed pursuant to LCDC policy, emails and text messages in the allegedly spoliated ESI could contain evidence of such discipline to establish a pattern of misconduct). Regardless, the Court finds this evidence is insufficient to create an issue of material fact as to Plaintiff's custom or policy claim for the reasons set forth herein.

daughter's sex trafficking and being told there was nothing the school could do to help her was insufficient to plausibly allege a pattern for a custom or usage claim of downplaying sexual harassment under *Monell*).

Turning to the conduct involving Tollison, including the recordings found after he was terminated, the incident between Tollison and E.G.A., and the second-hand reports to Plaintiff that Tollison had previously engaged in inappropriate sexual conduct with female officers during training, the Court likewise finds that, while a closer call, this evidence is insufficient to create a question of material fact as to Plaintiff's custom or usage claim. As to the recordings, the evidence in the record filed in support of summary judgment shows that these were not discovered by policymakers until after the incident between Tollison and Plaintiff and after he was terminated. *See* ECF Nos. 210-2 at 18–19, 36; 210-7 at 12; 210-4 at 8, 9.[6] Thus, the Court finds that this conduct does not

[6] In her objections to the Magistrate Judge's recitation of facts, Plaintiff disputes whether it was unknown that Tollison had created these recordings, citing to a portion of Tollison's deposition for support. ECF No. 223 at 30. Upon review of the record, this portion of Tollison deposition was not submitted to the Court for review along with the Motion for Summary Judgment. *See* ECF Nos. 210-7; 213-4. Further, Plaintiff's citation to this portion of Tollison's deposition did not indicate that it was anywhere else in the record before the Court. ECF No. 223 at 30. Accordingly, the Court overrules Plaintiff's objection to this recitation of fact. However, a review of the overall record shows that at least a portion of the relied upon testimony was submitted along with earlier filings. *See* ECF No. 194-2 at 5. The Court emphasizes that it is the Parties' burden to present evidence to the Court in support of their summary judgment arguments, and it is not the Court's responsibility to comb the record to find evidence to support their arguments. *See* *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) ("Judges are not like pigs, hunting for truffles buried in the record." (citation modified)). The Court is disinclined to consider this evidence in deciding whether summary judgment is proper in this instance. However, even if the Court were to consider this testimony, it does not change the Court's finding that summary judgment is appropriate on Plaintiff's custom or usage claim. Tollison testified that it was well-known that his computer in his office was recording "most of the time" and that a supervisor knew people were changing clothes in his office; he also testified in response to a direct question that while people at the Sheriff's Office were aware his computer was recording, they were not aware that his computer had recorded

create an issue of material fact. *Spell*, 824 F.2d at 1391 (requiring that responsible policymakers have "actual or constructive knowledge" of the existence of a custom or policy); *Lytle v. Doyle*, 197 F. Supp. 2d 481, 495 (E.D. Va. 2001) (explaining that police involvement in two previous incidents that was unknown to policymakers until after the incident that gave rise to the present suit were insufficient to support a finding of a "widespread and permanent" practice necessary to establish plaintiff's custom or usage claim), *aff'd on other grounds*, 326 F.3d 463 (4th Cir. 2003).

Regarding Tollison's conduct with E.G.A., which occurred five years prior to the incident between Tollison and Plaintiff, the evidence in the record indicates that, while Tollison met E.G.A. through LCSO's Explorer program, the assault occurred outside the workplace, in his own car, not in uniform, and with a non-employee minor. ECF Nos. 223 at 20–21; 81-7 at 4–5. Further, E.G.A. did not report Tollison's assault at the time, and there is no evidence to support a finding that Defendants Sheriff Reynolds and LCSO were aware of it prior to the incident between Tollison and Plaintiff. ECF No. 81-7 at 5–6. The Court finds that this conduct is readily distinguishable from what occurred between Plaintiff and Tollison as it occurred outside the workplace and further that it cannot support Plaintiff's claim because the evidence in the record demonstrates that Defendants Sheriff Reynolds and LCSO were not aware of Tollison's conduct with E.G.A. until after seeing the facts underlying Plaintiff's claims against Tollison. *Spell*, 824 F.2d at 1391; *Lytle*, 197

---

and had been turned on to record females undressing. *See* ECF No. 194-2 at 5; 210-7 at 12. This testimony does not create a question of fact concerning whether there was a custom or practice by Defendants Sheriff Reynolds and LCSO being deliberately indifferent to sexual misconduct in the workplace such that it made a sexual assault possible as this conduct was readily distinguishable from the conduct alleged to have violated Plaintiff's constitutional rights. *See, e.g.*, *Lytle*, 326 F.3d at 473; *B.R. v. F.C.S.B.*, 2023 WL 2464975, at *9.

F. Supp. 2d at 495.

Finally, with regard to the previous inappropriate conduct by Tollison towards other female employees during training, this was second-hand information given to Plaintiff, with no specific detail regarding when the alleged incidents occurred, what was said, or to whom this conduct was allegedly reported. *See* ECF No. 213-3 at 40–42. Indeed, upon close review of Plaintiff's deposition, it is unclear whether any of these individuals reported those incidents prior to the conduct that underlies this lawsuit. *See id.* at 40–42, 44, 45, 46 (testifying that neither of the two individuals who accused Tollison of assaulting them during training reported this conduct prior to August 2020 but giving contradictory testimony about whether any of Tollison's offending conduct against other individuals was ever reported prior to August of 2020). Even if the Court were to make the inference that these incidents were reported to a policymaker at LCDC or that the destroyed ESI would contain information about the specifics of these prior incidents with Tollison, which is highly speculative, these incidents alone are not enough to establish a custom or usage claim against Defendants Sheriff Reynolds and LCSO. *Carter,* 164 F.3d at 219 (holding that two prior incidents of unlawful conduct represent "exceedingly thin gruel" for municipal liability); *see also, Neiswonger v. Hennessey,* 89 F. Supp. 2d 766, 777 (N.D.W.Va. 2000) (finding two prior incidents insufficient to support a finding of liability). Moreover, even viewed in conjunction with the prior incidents of sexual misconduct, based on the varied nature of the prior incidents, which do not appear to have violated the same constitutional protections asserted by Plaintiff, the Court does not find this conduct as a whole creates a question of material fact concerning whether there was a pattern of unconstitutional conduct that was widespread or flagrant to support Plaintiff's

custom or usage claim. *See Carter,* 164 F.3d at 218 (finding no pattern of unconstitutional conduct where past misconduct involved different violations of constitutional protections).

Even if the Court were to find sufficient evidence as to the first element, the evidence in the record reflects that Defendants Sheriff Reynolds and LCSO did not fail, as a matter of specific intent or deliberate indifference, thereafter, to correct or stop the practices Plaintiff asserts supported her claim. The evidence reflects that Defendants implemented punishments in multiple instances, including suspension, remedial training, and termination. *See* ECF No. 210-2 at 22–23, 28, 29–30. Though Plaintiff might disagree with the degree of punishment meted out, the Court finds that the punishments imposed do not reflect that Defendants Sheriff Reynolds and LCSO were deliberately indifferent to sexual misconduct in the workplace. *See, e.g.*, *Jones v. Ziegler*, 894 F. Supp. 880, 891, 893–94 (D. Md. 1995) (finding that a plaintiff had not satisfied the deliberate indifference standard for proving under § 1983 municipal fault based on the argument that the chief of police should have previously imposed a more severe penalty in punishing one particular officer accused of sexual assault where the evidence in the record demonstrated that complaints of sexual misconduct lodged against police officers were vigorously investigated and that, when appropriate, disciplinary measures including termination of the accused officer's employment were imposed), *aff'd sub nom.*, *Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997); *Washington v. McAuliffe*, No. 7:16-cv-00476, 2018 WL 401903, at *8 (W.D. Va. Jan. 12, 2018) (explaining that liability attaches where there is "continued inaction in the face of documented widespread abuses"); *S.B. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 77 (4th Cir. 2016) (providing in the Title IX context that, while deliberate indifference can exist where a school has simply conducted a

"half-hearted investigation" or implemented ineffective remedial measures, "[a] school's actions do not become 'clearly unreasonable' simply because a victim . . . advocated for stronger remedial measures").

Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's custom or usage claim and her objection as to this claim is overruled.

2. Failure to Train

Plaintiff contends that the Magistrate Judge erred in recommending that summary judgment be granted as to her failure-to-train claim. ECF No. 223 at 16–23. Plaintiff argues that Defendants Sheriff Reynolds and LCSO's systemic failure to train their employees concerning sexual harassment is sufficient evidence from which a jury could determine that Defendants Sheriff Reynolds and LCSO's deliberate indifference to Plaintiff's constitutional rights led to the violation of Plaintiff's rights. *Id.* Specifically, Plaintiff points to evidence that Defendants Sheriff Reynolds and LCSO failed to ensure completed mandatory sexual harassment training; failed to adopt policies governing sexual harassment including policies covering reporting, prevention, and detection; and failed to discipline employees who failed to complete the required sexual harassment training. *Id.* at 17, 18–20. According to Plaintiff, these were more than isolated deficiencies and, thus, they create a triable issue regarding whether Defendants Sheriff Reynolds and LCSO were deliberately indifferent. *Id.* at 17.

Defendants argue that, even viewing the evidence collectively, summary judgment is appropriate on Plaintiff's failure-to-train claim. ECF No. 230 at 13–14. According to Defendants, any deficiencies with training did not constitute deliberate indifference because "nothing indicated that 'a need for compliance' was 'plainly obvious'" and a

"general ineffectiveness in training" does not create constitutional liability for a failure to train. *Id.* at 15. Defendants further contend that there was no pattern of similar constitutional violation sufficient to put them on notice that the need for training was "plainly obvious," and accordingly Plaintiff has failed to demonstrate that they were deliberately indifferent. *Id.* at 15–17.

In certain narrow circumstances, a municipality may be liable under § 1983 for failure to adequately train its employees. *See, e.g., Connick v. Thompson*, 563 U.S. 51, 59–63 (2011); *Canton v. Harris*, 489 U.S. 378, 388–92 (1989). To establish such a claim, a plaintiff must prove that (1) a municipality employee actually violated the plaintiff's constitutional or statutory rights, (2) the municipality's failure to properly train or supervise the subordinates amounts to "deliberate indifference" to the rights of the plaintiff, and (3) this failure to train or supervise actually caused the subordinates to violate the plaintiff's rights. *Connick*, 563 U.S. at 59–63; *Canton*, 489 U.S. at 388–92; *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000); *Spell*, 824 F.2d at 1389–90. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62; *see Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (collecting cases).

Here, the Court differs from the findings of the Magistrate Judge and concludes that there are material questions of fact as to whether Defendants Sheriff Reynolds and LCSO's failure to train led to Plaintiff's constitutional injury. There appears to be no dispute as to the first element—Tollison violated Plaintiff's constitutional rights when he

sexually harassed and assaulted her in the workplace.[7] Turning to the second element, whether Defendants' failure to properly train or supervise the subordinates amounts to "deliberate indifference" to Plaintiff's rights, the Court finds that a question of fact exists based on the evidence in the record. Here, Defendants had no policy in place for reporting, preventing, and detecting sexual harassment, in 2020, when the incident between Tollison and Plaintiff occurred. *See* ECF Nos. 213-12 at 36; 213-6 at 11. Moreover, though Defendants offered and had a policy requiring training on sexual harassment, the evidence reflects that no supervising authority followed up on this training, and, in incidents of prior sexual misconduct, the perpetrators had not completed this required training. *See* ECF Nos. 210-2 at 6; 213-12 at 5–7, 12–15, 17–18; 213-16; 80-18; 80-21.[8]

Given this evidence, the Court finds that a material question of fact exists for the jury concerning whether Defendants Sheriff Reynolds and LCSO failed to train their employees on sexual harassment and their continued failure was the result of deliberate indifference to Plaintiff's rights. While the Court finds that the prior incidents do not support a custom or usage claim based on the readily distinguishable factual

---

[7] The Court discusses the Parties' positions and its own finding on whether Tollison's conduct violated Plaintiff's constitutional rights in more detail below in its discussion of the applicability of qualified immunity. The Court incorporates that discussion by reference here, and, accordingly, finds that the first element of Plaintiff's claim for failure to train is established.

[8] Plaintiff made several objections to the Magistrate Judge's recitation of facts regarding Defendants' training requirements. *See* ECF No. 223 at 29–30. As set out in the Court's discussion, some of the factual recitations by the Magistrate Judge are contradicted by other evidence in the record. Accordingly, the Court declines to adopt the Magistrate Judge's recitation of facts as to those facts, and Plaintiff's objections are sustained.

circumstances under which they occurred, the fact that the perpetrators of these prior incidents of sexual misconduct had not met the training requirements for sexual harassment is enough to create a question of fact of whether Reynolds and LCSO were on notice that their failure to follow up on these training requirements could lead to a constitutional injury. Accordingly, evidence of Sheriff Reynolds and LCSO's continued failure to hold its employees accountable for these training requirements after these prior incidents is sufficient to create a material question of fact as to whether they were deliberately indifferent to Plaintiff's constitutional rights.

Finally, as to the last element, while Defendants argue that the evidence of record does not support the conclusion that its conduct caused the harm to Plaintiff, the Court disagrees. Evidence in the record indicates that Tollison went years without receiving sexual harassment training and recognized the deficiencies in his sexual harassment training. *See* ECF No. 80-18; 213-4 at 23. This evidence, combined with the evidence of previous perpetrators' failures to complete sexual harassment training, is sufficient to create a question of fact whether Defendant Sheriff Reynolds and LCSO's failure to train caused Plaintiff's constitutional injury. Accordingly, Defendants' Motion for Summary Judgment is denied as to Plaintiff's failure to train claim and her objection to the Report as to this claim is sustained.

3. <u>Failure to Supervise</u>

Defendants object to the Magistrate Judge's recommendation that summary judgment be denied as to the Plaintiff's failure to supervise claim. ECF No. 224 at 3–11. According to Defendants, Plaintiff failed to show they had a widespread practice or custom of failure to supervise its officers, their failure to supervise employee conduct

posed a pervasive or unreasonable risk, or any causal link between a supervisor's inaction and Plaintiff's injury. *Id.* at 3. As to whether there was a widespread custom of lack of supervision during training, Defendants argue that Plaintiff's arguments regarding training are misleading because Tollison was an assistant instructor and not the primary instructor for new hires and the prior instances of assisting with training without proper certification are distinguishable from being permitted to conduct such training on his own. *Id.* at 5. Further, Defendants assert that when Tollison conducted training as a field training officer ("FTO"), he did not require certification to teach cell searches or clothed searches. *Id.* at 5–6. Defendants further contend that the evidence does not support that any incident prior to the one between Tollison and Plaintiff would have put them on notice of the need to supervise. *Id.* at 6–8. Finally, Defendants argue that there is no evidence to support the finding that they could or should have known Tollison would commit a sexual assault if they failed to supervise his training of Plaintiff and, thus, summary judgment is appropriate as to this claim. *Id.* at 8–9.

In Reply, Plaintiff asserts that there are genuine issues of material fact precluding summary judgment on her supervisory liability claim. ECF No. 231 at 2–8. Plaintiff asserts the evidence in the record supports her assertion that Tollison's supervisors directed him to conduct training, including pat-down training for many new hires. *Id.* at 2–6. Though Defendants may have defined Tollison as an assistant instructor who was not the primary trainer for new hires, Plaintiff contends that Tollison's testimony supports finding that he conducted training on his own if someone else was unavailable and that he was active in training new hires, including pat-down training, without certification and with the knowledge of his supervisors, and was often the primary trainer. *Id.* at 2–4.

Further, Lawson testified that Tollison did a lot of training and she was aware of this training. *Id.* at 4. Plaintiff further points to a policy that field training would consist of the assignment of a "certified and trained" FTO, and that Tollison testified he was the FTO during his time on night shift, even though he was not the FTO for Plaintiff's shift. *Id.* at 5–6. Plaintiff argues that the evidence is sufficient to form the inference that Tollison's supervisors knew he was conducting training with a female trainee without being certified and in violation of several policies at their direction and the case that Defendants rely upon is distinguishable. *Id.* at 7–8. For these reasons, Plaintiff asserts there is an issue of fact as to whether Tollison's supervisors should have known he was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to Plaintiff. *Id.* at 8.

The doctrine of *respondeat superior* does not apply to actions under § 1983. *See Monell,* 436 U.S. at 691. In order for supervisory liability to exist in a § 1983 action, it must be established:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted); *see also Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir. 1984).

Deliberate indifference under the second prong is a demanding standard that requires more than a showing of negligence. *Owens*, 767 F.3d at 402; *see also Est. of*

*Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020). It requires proof that municipal policymakers (1) knew or should have known that their failure to act was likely to result in constitutional injury, and (2) disregarded that risk. *Shaw*, 13 F.3d at 799; *see City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). Isolated instances of unconstitutional conduct by municipal employees are insufficient to establish municipal liability, and a plaintiff generally must demonstrate a pattern of "persistent and widespread" similar constitutional violations sufficient to place policymakers on notice that their failure to adopt appropriate policies or training would likely result in constitutional injury. *See Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984); *see Carter*, 164 F.3d at 218 (rejecting municipal liability based on "isolated incidents"); *Owens*, 767 F.3d at 402-03 (citing *Spell*, 824 F.2d at 1386–91); *Lytle*, 326 F.3d at 474; *Spell*, 824 F.2d at 1390 (finding there can still be liability where the deficient training made "the specific violation almost bound to happen, sooner or later" (internal quotation marks omitted)); *Canton*, 489 U.S. at 390 n.10 (positing that in certain situations, the need for training can be "so obvious" and its absence "so likely" to produce a constitutional violation that a failure to train amounts to deliberate indifference).

Here, the evidence in the record creates an issue of fact as to whether Tollison's supervisors knew or even directed Tollison to conduct training, including pat-down training, without proper certification or other training. *See* ECF Nos. 213-4 at 20, 37, 40; 210-2 at 15–16, 210-3 at 18. There is also evidence creating a dispute of whether Tollison or other employees performed such training with employees prior to Plaintiff in violation of LCDC policy and with his supervisor's knowledge. *See* ECF Nos. 213-4 at 3–4, 14, 20–21, 28–29; 231-1 at 8. Further, the evidence in the record indicates that Tollison's

supervisors recognized that pat-down training by an officer of the same-sex just was common sense. ECF No. 213-6 at 14; 213-9 at 1. And the evidence additionally indicates that supervisors knew Tollison used a measuring tape to measure people for uniforms, even though they recognized that this was not necessary or proper. *See* ECF Nos. 213-4 at 15, 17–19; 213-6 at 16–17. Based on this evidence, the Court finds there is a question of fact whether the supervising parties had knowledge that there was a widespread practice or custom of training in violation of these policies, recognized that engaging in training conduct in violation of this policy "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff," and failed to take action to correct these practices.

Defendants' reliance on *Mullen v. Town of Sunset Beach, North Carolina,* 175 F.4th 466 (4th Cir. 2026), for the proposition that, because no one knew or could have known that Tollison would act improperly with Plaintiff, any omission in training or supervision could not have caused Plaintiff's injuries is unpersuasive. *See* ECF No. 224 at 9–11. The plaintiff in *Mullen*, a civilian who was not employed by the defendant municipality, encountered one of the defendant's officers when he executed a traffic stop on the car that the plaintiff was driving without a valid license. 175 F.4th at 470. After the stop, the officer visited and entered the plaintiff's home about four times while on duty, where he exposed himself and pressured the plaintiff to engage in sex acts in exchange for leniency regarding her driving violations. *Id.* The defendant had a policy against engaging in sexual activity while on duty and a general rule requiring officers to be attentive and alert while on duty and to not act in a manner that "brings the department into disrepute or reflects discredit upon the employee." *Id.* at 471. However, the offending

officer stated that he had not received any training on sexual misconduct, and the defendant did not have a particular written policy regarding sexual misconduct. *Id.* Prior to the incident between the plaintiff and the offending officer, three other officers had engaged in consensual sexual activities while on duty, and these officers were all permitted to resign. *Id.*

The district court granted summary judgment to defendant on the plaintiff's § 1983 claims because it found that, as a matter of law, the plaintiff's injuries did not result from the defendant's failure to adopt policies prohibiting the officer's conduct or from its failure to train and supervise its officers. *Id.* at 469. The Fourth Circuit affirmed the award of summary judgment on appeal because, based on the record before it, no jury could reasonably conclude that the defendant knew that there was a substantial risk that one of its officers would commit a sexual assault. *Id.* Specifically, the Fourth Circuit found that the prior incidents all involved officers engaging in consensual sexual relations while on duty, and, while this conduct violated the defendant's rules, the prior incidents did not resemble the allegations of sexual assault and coercion in the instant action. *Id.* at 473. Further, the Fourth Circuit explained that the defendant lacked notice that any officer was committing similar sexual assaults as no facts demonstrated that a supervisor or other policymaker knew or should have known about the offending officer's unlawful conduct, failed in their supervision of the officer, or could have acted to prevent his actions. *Id.*

The Court finds that the facts and evidence in *Mullen* are readily distinguishable from those present in this action. In *Mullen*, the policies at issue involved not having sexual relations while on duty and a general duty to not act in a manner that "brings the department into disrepute or reflects discredit upon the employee," and there was no

evidence concerning the reasoning behind these policies or the supervising officers' appreciation for the reasoning behind these policies. *Id.* at 471. In this case, the policy violations and circumstances surrounding them are much different. As set out above, there is a question of fact as to whether Tollison was directed to perform training, including pat-down training, with Plaintiff, who was a member of the opposite sex, by Tollison's supervising officers despite these officers' knowledge and appreciation of the reasoning behind the policy preference for same-sex pat-down training. There is also a question of fact for a jury to decide whether the supervising officers' appreciation for the reasoning behind these policies made them aware of a pervasive and reasonable risk that a training officer acting in violation of these policies would violate Plaintiff's constitutional rights. Thus, a reasonable juror could find that failure to supervise under these circumstances could be the result of Defendants Sheriff Reynolds and LCSO's deliberate indifference.

Though there is no evidence of previous incidents of sexual assault during pat-down training with an employee, unlike in the *Mullen* case, there is evidence here of a policy preference for same-sex pat-downs, the supervising officers' appreciation for the reasoning behind those policies, and a question of fact regarding whether the supervising officers instructed Tollison to perform training with Plaintiff in violation of those policies in this case. Accordingly, the Court finds that this is one of the rare circumstances where a similar previous incident is not necessary to establish deliberate indifference because there is a question of fact as to whether the risk was so apparent and obvious to Defendants Sheriff Reynolds and LCSO such that a prior incident is not necessary to support a finding of liability for failure to supervise under these circumstances. *Canton*, 489 U.S. at 390 n.10.

Further, Defendants' arguments conflate the requirements for Plaintiff's claims for failure to intervene and failure to supervise. Unlike a failure to intervene claim, Plaintiff is not required to show Defendants Sheriff Reynolds and LCSO's actual or constructive knowledge that an illegal act, in the form of a constitutional violation, was being committed by a fellow officer to prevail on her failure to supervise claim. *Stevenson*, 743 F.3d at 416–17. Rather, Plaintiff need only show that prior incidents could or should have made Defendants Sheriff Reynolds and LCSO aware of a pervasive and unreasonable risk of constitutional harm. *Shaw*, 13 F.3d at 799 (explaining that a failure to supervise claim requires proof that municipal policymakers knew or should have known that their failure to act *was likely* to result in constitutional injury and policymakers were deliberately indifferent to that *risk*). Though the Court does not find that there is sufficient evidence of Defendants' knowledge to trigger a duty to intervene, there was sufficient evidence to create a question of fact whether Defendants' knowledge of training practices by Tollison and reasoning behind certain LCDC policies made them aware of a risk of constitutional injury should these violations continue without supervision. Indeed, considering the contradictory evidence concerning whether Tollison's supervisors instructed him to perform the training at issue, there remains a question of fact as to whether this instruction triggered a duty to supervise in light of the recognized and obvious preventative and risk related reasons behind the policy preferring same-sex pat-down searches. Accordingly, Defendants' Motion for Summary Judgment is denied as to Plaintiff's failure to supervise claim and Defendants' objection as to this claim is overruled.

**D. Qualified Immunity**

Defendants also object to the Magistrate Judge's recommendation denying

summary judgment as to any of Plaintiff's claims because qualified immunity bars Plaintiff's recovery.[9] ECF No. 224 at 11–12. 231 at 9–11. Defendants argue that because the individual Defendants were unaware of and not present during the alleged violation of Plaintiff's constitutional rights, they had no opportunity to intervene and, thus, they could not be in violation of any clearly established right. *Id.* at 12. They additionally point to their prompt response after Plaintiff reported Tollison's conduct as a basis for finding they did not violate Plaintiff's constitutional rights. *Id.* It is unclear whether Defendants dispute that sexual assault by a state actor is a violation of a clearly established constitutional right. *See id.* In Reply, Plaintiff asserts that the individual Defendants are not entitled to summary judgment based on qualified immunity because sexual assault by a state actor is a violation of a clearly established constitutional right and genuine disputes of material fact exist as to the whether the individual Defendants' conduct violated this federal right. ECF No. 231 at 9–11.

Qualified immunity "bars § 1983 suits against government officers in their individual capacity." *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Id.* at 655–56 (cleaned up). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (citation omitted). For the second prong, "'the salient

---

[9] Defendants raised qualified immunity as a defense in its initial Motion, but the Magistrate Judge did not consider whether qualified immunity was applicable to any of Plaintiff's claims. *See* ECF Nos. 210-1 at 26–28; 221.

question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged conduct was unconstitutional.'" *Id.* (citation omitted). When considering the second prong, courts look to the "objective legal reasonableness" of the action and assess it "in light of the legal rules that were clearly established at the time it was taken" as qualified immunity provides "immunity from suit where a state actor's conduct is objectively reasonable under the circumstances." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 244 (2009)). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan*, 572 U.S. at 656 (citing *Pearson*, 555 U.S. at 236).

Though it is unclear whether the issue is disputed, the Court finds that the right to be free from sexual assault at the hands of a state official acting in his official capacity is a clearly established constitutional right. *See, e.g.*, *Beardsley v. Webb,* 30 F.3d 524, 530 (4th Cir. 1994) ("[T]he equal protection clause confers on a public employee a federal constitutional right to be free from gender discrimination."); *Ensko v. Howard Cnty., Md.*, 423 F. Supp. 2d 502, 512 (D. Md. 2006) (explaining that if the supervising officer condoned sexual harassment then this would be a violation of a clearly established statutory right precluding the defense of qualified immunity); *Ray v. Roane*, 948 F.3d. 222, 229-30 (4th Cir. 2020) ("Still, even without directly on-point, binding authority, qualified immunity is inappropriate if the right was clearly established based on general constitutional principles or a consensus of persuasive authority." (citations and internal quotation marks omitted)); *Sexton v. Cernuto*, No. 19-12574, 2021 WL 37731, at *6 (E.D. Mich. Jan. 5, 2021), *aff'd,* 18 F.4th 177 (6th Cir. 2021) ("[S]exual assault is 'so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no

rational individual could believe that sexual abuse by a state actor is constitutionally permissible . . . .'" (quoting *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495 (6th Cir. 1996))).

Thus, the Court turns to the reasonableness of the individual Defendants' conduct surrounding the assault, specifically as to their alleged failures to train and to supervise. As set out above regarding Plaintiff's failure to train and failure to supervise claims, questions of fact exist with regard to whether Defendants Sheriff Reynolds and LCSO violated Plaintiff's clearly established rights, and therefore, the undersigned cannot determine at this time whether the individual Defendants' actions were objectively reasonable. *See*, *e.g.*, *Kane v. Beaufort Cnty. Sheriffs Dep't*, No. 9:14-cv-508-RMG, 2015 WL 404570, at *5 (D.S.C. Jan. 29, 2015) ("[S]ummary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants" (quoting *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 180 (4th Cir. 1998))); *see also Hollabaugh v. Cartledge*, C.A. No. 9:14-1324-BHH-BM, 2016 WL 11423538, at *9 (D.S.C. Mar. 7, 2016) (denying summary judgment on qualified immunity, "as it was certainly clearly established during the time period at issue that even supervisory personnel can be subject to liability for having either direct knowledge of, or having created a policy or practice exercised by their subordinates, sufficient to create a situation from which an inference could be drawn that a substantial risk of harm existed and being deliberately or callously indifferent to that substantial risk of serious harm"), *report adopted by* 2016 WL 2848370 (D.S.C. May 16, 2016); *Ensko*, 423 F. Supp. 2d at 512 (denying summary judgment to police chief because of genuine issues as to whether he condoned sexual harassment of employee; thus, a

genuine issue existed whether chief was entitled to qualified immunity).

Accordingly, the Court denies Defendants' Motion for Summary Judgment on the grounds of qualified immunity. *See*, *e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (explaining that a defendant is entitled to qualified immunity only insofar as the conduct alleged did not violate clearly established statutory or constitutional rights of which a reasonable person should have known); *Newkirk v. Enzor*, 674 Fed. Appx. 276 (4th Cir. 2017) (affirming denial of summary judgment on qualified immunity where facts remained in dispute).

**E. Damages Claim**

Defendants additionally object to the Magistrate Judge's Report because they assert that they are entitled to summary judgment as to Plaintiff's claim for economic damages as a Class I law enforcement officer. ECF No. 224 at 12–13.[10] Specifically, Defendants assert that any claim for future economic damages as a Class I officer is based on the assumption and premise that Plaintiff met the requirements of such a position, and Defendants object to calculation of wage loss or economic damages associated with this position since she does not meet the requirements and never has.[11] *Id.* at 13. Plaintiff asserts that there is a factual dispute as to whether Defendants' conduct

[10] Defendants generally raised this issue in their Motion for Summary Judgment, but the Magistrate Judge did not address it in the Report. *See* ECF Nos. 210 at 29; 221.

[11] The Court notes that this argument differs slightly from Defendants' argument for summary judgment as to damages. In their Motion, Defendants asserted that Plaintiff was not entitled to damages based on her inability to keep her position with Abbeville City Police Department because she was terminated based on her inability to pass her Class I certifications. ECF No. 210 at 29. The Court's analysis is limited to the argument presented by Defendants in their objection, and the Court makes no determination at this procedural posture of whether Plaintiff is generally entitled to lost wages based upon her termination from Abbeville City Police Department.

caused her to be unable to pass her test to become a Class I officer. ECF No. 231 at 11–12. Plaintiff contends that Defendants' conduct affected her ability to focus and concentrate and her mental health generally, and, therefore, there is sufficient evidence for a jury to find that Defendants caused her to fail her certification requirements and resulted in lost future earnings. *Id.*

For damages under § 1983, the constitutional violation must have caused the injury. *Price v. City of Charlotte*, 93 F.3d 1241, 1245 (4th Cir. 1996). When the injury is not caused by the deprivation of constitutional rights, damages will not be recovered. *Id.* at 1246.

Here, the undisputed evidence in the record demonstrates that Plaintiff continued to work for LCDC for almost three years following the incidents with Tollison. During this time, she was not certified as a Class I officer. After leaving LCDC, Plaintiff went to work for Abbeville City Police Department and worked there from June 2023 until August 30, 2023. Plaintiff was released from this position because she failed to meet the requirements to become a Class I officer. It does not appear that she has ever met the requirements for this certification and the accompanying pay.

Though Plaintiff has presented some evidence that the incidents with Tollison caused her mental distress, the Court finds that this alone offers nothing more than a mere scintilla of evidence that such distress caused her to fail to meet certain criteria to receive her Class I officer certification. Even making all inferences in Plaintiff's favor, this evidence is insufficient to create an issue of triable fact for a jury on the matter of damages based on this certification. Accordingly, summary judgment is granted as to Plaintiff's claim for future earning and/or benefits based on certification as a Class I officer.

**F. Defendant Laurens County**

As the Magistrate Judge explained in the Supplemental Report, none of Plaintiff's causes of action reference or name Defendant Laurens County. ECF No. 234 at 1–2. Plaintiff admits that "the heading of [her] Fourth Cause of Action" inadvertently omits Defendant Laurens County but asks, if necessary, for leave to amend her Amended Complaint to reflect that she is alleging a *Monell* claim against Defendant Laurens County. *Id.* at 2; ECF No. 236 at 2–5. Plaintiff makes several objections to the Magistrate Judge's recommendation to decline this amendment request and grant summary judgment as to Defendant Laurens County. First, Plaintiff argues her claim against Defendant Laurens County was sufficiently pled through factual allegations directed at Laurens County, specifically by Paragraph 77 under the Fourth Cause of Action because it incorporates by reference Paragraphs 27 through 33 of Plaintiff's Factual Allegations, which are directed at Laurens County. ECF No. 236 at 2–3. Plaintiff next argues that if the Court concludes an amendment to Plaintiff's Amended Complaint is necessary, the Magistrate Judge incorrectly concluded that leave to amend would be unwarranted because the request was not properly before the court, the request was untimely, and amendment would be futile. *Id.* at 4–5. Last, Plaintiff contends that, on the merits, summary judgment as to Defendant Laurens County is not warranted because there are genuine disputes of fact surrounding Laurens County's liability. *Id.* at 5–8. In Reply, Defendants assert that all of the reasons set forth by the Magistrate Judge in the Supplemental Report are sufficient, alone or together, to warrant summary judgment. ECF No. 237 at 2–3.

First, the Court incorporates its findings as to Plaintiff's *Monell* claim based on custom or usage as discussed above and finds the grant of summary judgment on that

theory of liability is applicable to Defendant Laurens County, irrespective of the pleading issues before the Court. Therefore, the Court grants summary judgment on the custom or usage claim as to Defendants Sheriff Reynolds, LCSO, and Laurens County. As also explained previously, Plaintiff's claims on the theories of failure to train and failure to supervise against Defendants Sheriff Reynolds and LCSO are sufficient to withstand summary judgment, and, thus, the Court addresses whether those claims have been or can be properly asserted against Defendant Laurens County below.

Federal Rule of Civil Procedure 15(a) states that a party may amend its pleading as a matter of course within 21 days after serving it or 21 days after service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). After that time, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule provides that the court "should freely give leave when justice so requires." *Id*. Leave to amend under Rule 15(a) "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009).

"Where a motion to amend the pleadings is filed after the deadline established by the court's scheduling order, the party seeking such an amendment must satisfy the 'good cause' requirements of Rule 16(b), in addition to the requirements of Rule 15." *Bucklew v. Derst Baking Co., LLC*, C/A No. 2:24-148-RMG, 2024 WL 4773208, *1 (D.S.C. Sept. 9, 2024) (citing *George v. Duke Energy Ret. Cash Balance Plan*, 560 F. Supp. 2d 444, 480 (D.S.C. 2008)). Under Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 16(b)'s "good cause"

requirement "is unlike the more lenient standard of Rule 15(a) in that Rule 16(b) 'does not focus on the bad faith of the movant, or the prejudice to the opposing party,' but focuses on the diligence of the party seeking amendment." *George*, 560 F. Supp. 2d at 480 (quoting *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997)).

The Court finds Defendant Laurens County was not merely omitted from the heading of Plaintiff's Fourth Cause of Action. While Defendants Sheriff Reynolds and LCSO are explicitly mentioned throughout the claim, Defendant Laurens County is not mentioned once. ECF No. 43 at 21–23. In addition, the Court finds compelling that Plaintiff has been aware of this omission since at least March 2024 but has not filed a motion seeking leave to amend her Amended Complaint, even to this day. *See* ECF No. 73-1 at 26. Leave to amend shall be freely given when justice so requires it. Fed. R. Civ. P. 15(a)(2). Here, however, the Court finds that the incorporation by reference of basic factual allegations involving Laurens County is insufficient to "bind" Laurens County to the Fourth Cause of Action, and thus, an amendment would be required. The Court additionally finds that the time to amend pleadings pursuant to the Parties' scheduling order has long passed, the amount of time that has lapsed since Plaintiff was put on notice that no cause of action was stated against Laurens County weighs heavily against amendment, and Plaintiff has failed to demonstrate good cause or shown diligence to otherwise warrant amendment at this stage. Accordingly, summary judgment is granted as to Defendant Laurens County, Laurens County is dismissed from Plaintiff's suit, and Plaintiff's corresponding objections are overruled.

## IV. CONCLUSION

For the reasons set forth above, the Court **ADOPTS IN PART** and **DECLINES TO**

**ADOPT IN PART** the Magistrate Judge's Report and **ADOPTS** the Supplemental Report as set out. Accordingly, Defendants' Motion for Summary Judgment [210] is **GRANTED IN PART** and **DENIED IN PART**.[12]

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

November 3, 2026
Spartanburg, South Carolina

[12] In sum, the Court grants summary judgment as to Plaintiff's Third Cause of Action and as to the portion of Plaintiff's Fourth Cause of Action based on a theory of custom or usage but denies summary judgment as to the failure to train and failure to supervise theories under the Fourth Cause of Action. The Court also grants summary judgment as to Defendant Laurens County because Plaintiff has not alleged a cause of action against it. Therefore, Plaintiff's remaining claims are against Defendants Tollison, Sheriff Reynolds, and LCSO, respectively.